UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ESG TECHNICAL SERVICES, LLC, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
|  vs. | ) Cause No: 1:09-cv-030-WTL-TAB |
| | ) |
| ADVANTAGE HEALTH SOLUTIONS, | ) |
| INC., et al., | ) |
| | ) |
|       Defendants. | ) |

### ENTRY ON MOTIONS TO DISMISS

This cause is before the Court on motions to dismiss filed by Defendant Schaller Anderson of Arizona, LLC, ("Schaller Anderson") (dkt. #23) and Defendant Advantage Health Solutions, Inc. ("Advantage") (dkt. #28). The motions are fully briefed, and the Court, being duly advised, **GRANTS IN PART AND DENIES IN PART** the motions for the reasons and to the extent set forth below.

*Motion to Dismiss Standard*

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded facts and draw all possible inferences in favor of the plaintiff. *Lake v. Neal*, 585 F.3d 1059, 1060 (7th Cir. 2009).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff has the obligation to provide the factual "grounds" of his entitlement to relief (more than "mere labels and conclusions"), and a "formulaic recitation of a cause of action's elements will not do." The complaint must contain "enough facts to state a claim to relief that is plausible on its face" and also must state sufficient facts to raise a plaintiff's right to relief above the speculative level. A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Bissessur v. Indiana University Bd. of Trustees*, 581 F.3d 599, 602 -03 (7th Cir. 2009) (citations

omitted).

## *Facts as Alleged in the Complaint*

The facts as alleged in the Plaintiff's complaint are as follow. Plaintiff ESG Technical Services, LLC, ("ESG") is a minority-owned enterprise owned by Steve Nelson. In conjunction with preparing its bid to participate in the Indiana Care Select Program ("ICSP"), Advantage approached ESG about participating as one of Advantages's subcontractors. ESG agreed, and on May 22, 2007, ESG and Advantage executed a Minority/Women Business Enterprise Subcontractor Commitment Form pursuant to which ESG was to provide real estate management services, including a building lease, for the office space that Advantage would use as an ICSP participant. ESG's compensation was to be $500,000 annually for four years. On May 29, 2007, Advantage and ESG entered into a Letter of Commitment that included the terms set forth in the Commitment Form.

Advantage submitted its bid to the State of Indiana. Schaller Anderson was the primary subcontractor listed in the bid. The bid also included ESG's Letter of Commitment. Advantage and another company's bids ultimately were accepted by the state. Schaller Anderson subsequently contacted ESG and represented that the state was requesting updated letters of commitment. Schaller Anderson then asked ESG to execute an updated letter of commitment that significantly decreased the amount of compensation ESG was to receive. ESG refused. The contract that was ultimately entered into between Advantage and the state ("the Contract") listed ESG as a Minority/Women Business Enterprise that would be one of Advantage's subcontractors; the contract indicated that ESG would be compensated $500,000 annually.

Pursuant to the Commitment Form, ESG worked with Advantage and Schaller Anderson to find appropriate office space, eventually locating a property that Advantage and Schaller

Anderson agreed upon. However, shortly after the Contract was executed, "representatives of Advantage and Schaller Anderson abruptly ceased all further communication with ESG," Complaint at ¶ 30, and subsequently negotiated a building lease that did not provide for ESG to provide management services.

*Discussion*

In its eight-count complaint, ESG alleges that the Defendants' refusal to allow ESG to perform as contemplated by the Contract was racially motivated. ESG asserts claims against the Defendants for racial discrimination (Count I), breach of contract (Count II), detrimental reliance (Count III), unjust enrichment (Count IV), intentional interference with a business/contractual relationship (Count V, asserted against Schaller Anderson only), intentional misrepresentation (Count VI), and fraud (Count VII). It also seeks an award of punitive damages (Count VIII). In the instant motions, the Defendants seek dismissal of Counts III through VII. In its response to the motions, ESG agrees to dismissal without prejudice of Counts III, IV, and VII. The parties' argument with regard to the two remaining claims at issue are addressed, in turn, below.

*Intentional Interference Against Schaller Anderson (Count V)*

Count V of the Complaint is entitled "Intentional Interference with a Business/Contractual Relationship." As Schaller Anderson points out, intentional interference with a business relationship and intentional interference with a contractual relationship are actually two separate torts, the difference between them being whether the relationship that was interfered with was governed by a contract. Thus, "[t]he elements of tortious interference with a business relationship are (1) the existence of a valid business relationship; (2) the defendant's knowledge of the existence of the relationship; (3) the defendant's intentional interference with

that relationship; (4) the absence of justification; and (5) damages resulting from the defendant's wrongful interference with the relationship," *Columbus Medical Services Organization, LLC v. Liberty Healthcare Corp.*, 911 N.E.2d 85, 94 (Ind. App. 2009), and "the five elements necessary for tortious interference with a contractual relationship are: (1) the existence of a valid and enforceable contract; (2) defendant's knowledge of the existence of the contract; (3) defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from defendant's wrongful inducement of the breach." *Stoffel v. Daniels*, 908 N.E.2d 1260, 1270 (Ind. App. 2009). Additionally, under Indiana law either tort "requires some independent illegal action." *Brazauskas v. Fort Wayne-South Bend Diocese, Inc.*, 796 N.E.2d 286, 291 (Ind. 2003).

Schaller Anderson suggests that ESG improperly blends two causes of action into one; however, "[a] party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Federal Rule of Civil Procedure 8(d)(2). In this case, ESG alleges that it was a third-party beneficiary to the Contract[1] and that Schaller Anderson intentionally and without justification induced Advantage to terminate its relationship with ESG and therefore deprive ESG of its third-party beneficiary rights under the Contract. ESG further alleges that Schaller Anderson acted because ESG was a minority-owned business; in other words, that its actions were motivated by racial animus. Contrary to Schaller Anderson's assertion that ESG has alleged no more than a simple breach of

---

[1]The Court notes, as does Schaller Anderson, that ESG's breach of contract claim is asserted against the Defendants without distinguishing between the two and that Schaller Anderson cannot be liable for tortiously interfering with a contract to which it was a party. Again, however, a party is entitled to plead alternative inconsistent claims, and Schaller Anderson's position clearly is that it was not a party to the Contract.

-4-

contract claim, the Court believes that these factual allegations, if proven, could support a claim for tortious interference.

At this point in the litigation, ESG must only demonstrate that it has a plausible claim for intentional interference against Schaller Anderson. Assuming the facts are as ESG has pled, it is plausible that, in the end, it will be determined that ESG was a third-party beneficiary to the Contract and that Advantage is liable to ESG for breaching that contract by not using ESG as a subcontractor.[2] It is also plausible under ESG's version of the facts that Schaller Anderson will be found not to have been a party to the Contract, but that it will be found liable to ESG for intentional interference for inducing Advantage to breach the contract because of the race of ESG's owner. Accordingly, Schaller Anderson's motion to dismiss Count V is **DENIED**.

*Intentional Misrepresentation (Count VI)*

The parties agree that in order to succeed on its claim for intentional misrepresentation, ESG would have to show "(1) a material misrepresentation of past or existing fact which (2) was untrue, (3) was made with knowledge of or in reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party, and (6) which proximately caused the injury or damage complained of." *See, e.g., Lawyers Title Ins. Corp. v Pokraka*, 595 N.E.2d 244, 249 (Ind. 1992). The parties also agree that representations regarding future conduct cannot support an action for fraud under Indiana law. *See, e.g., Wells v. Stone*

---

[2]The Court has not reviewed the terms of the Contract and expresses no opinion regarding the merits of ESG's breach of contract claim, but rather simply notes that the Defendants have not moved to dismiss that claim, and therefore impliedly concede that it has been adequately pled, although they make it clear that they do not concede that the claim has merit and express their intention to address the claim in a future (presumably summary judgment) motion.

*City Bank*, 691 N.E.2d 1246, 1250 (Ind. App. 1998).  The Defendants argue–correctly–that ESG's claim for misrepresentation is based upon precisely that–the Defendants' representation that ESG would be paid $500,000 over four years as a subcontractor pursuant to the Contract.

ESG effectively concedes this point, as it must, but argues nonetheless that its misrepresentation claim should not be dismissed because "although future conduct of parties alone cannot support fraudulent claims, surrounding circumstances can be sufficient from which fraud could be inferred" and that "'[a] representation regarding future conduct can, in some situations, give rise to a constructive fraud.'"  ESG Response at 9 (quoting *Wells*, 691 at 1250). While that is an accurate quote from *Wells*, ESG has fails to acknowledge the rest of the holding of *Wells*–that a claim for constructive fraud requires the breach of a "duty existing by virtue of the relationship between the parties."  *Id.*  ESG neither alleges the existence of such a relationship in this case nor asserts facts from which such a relationship could be found. Accordingly, it has failed adequately to plead a claim for material misrepresentation, and that claim must be dismissed.

## *Conclusion*

For the reasons set forth above, the motions to dismiss are **GRANTED** as to Counts III, IV, VI, and VII, and **DENIED** as to Count V.

SO ORDERED:   12/08/2009

*[signature: William T. Lawrence]*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification